## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>*This Document Relates to:*<br><br>All Actions | Case No. 0:18-cv-01776 (JRT-HB)<br><br>Case No. 0:21-md-02998 (JRT-HB)<br><br>**CONSUMER INDIRECT PURCHASER PLAINTIFFS' RESPONSE REGARDING COURT'S AUGUST 5, 2021, BRIEFING ORDER** |

## TABLE OF CONTENTS

                                                      **Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      The JPML ordered the new DAP cases centralized into an MDL with those already pending before this Court. .................................................................. 2

II.     The JPML's centralization—whether resulting in coordinated or consolidated pretrial proceedings—allows all the cases to receive the benefits of proceeding as an MDL. ............................................................................ 5

        A.      MDL judges may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions and enforcing third party subpoenas. ............................................. 5

        B.      These broad powers are important to CIPs, because in other litigation DAPs have unnecessarily required subpoenas to be issued and enforced all over the country. ........................................ 7

III.    Consolidation will allow the three-year litigation effort to proceed without interruption by new DAPs whose interests are adverse to CIPs. ............................................................................................................... 9

CONCLUSION ................................................................................................................. 12

010736-11/1606715 V1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Asbestos Prod. Liab. Litig. (No. VI),*
  256 F.R.D. 151 (E.D. Pa. 2009) ................................................................................. 6

*In re Bear Creek Techs., Inc., ('772) Pat. Litig.,*
  858 F.Supp.2d 1375 (J.P.M.L. 2012) .................................................................... 4, 5

*In re Checking Acct. Overdraft Litig.,*
  626 F. Supp. 2d 1333 (J.P.M.L. 2009) .................................................................... 4

*In re: Disposable Contact Lens Antitrust Litig.,*
  109 F. Supp. 3d 1369 (J.P.M.L. 2015) .................................................................... 4

*In re Disposable Contact Lens Antitrust Litig.,*
  306 F. Supp. 3d 372 (D.D.C. 2017) ........................................................................ 5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
  2020 WL 9065791 (S.D.N.Y. May 8, 2020) ......................................................... 5, 6

*In re Levaquin Prod. Liab. Litig.,*
  2010 WL 4867407 (D. Minn. Nov. 9, 2010) ........................................................... 5

*In re Neurontin Mktg., Sales Pracs., & Prod. Liab. Litig.,*
  245 F.R.D. 55 (D. Mass. 2007) ................................................................................ 6

*U.S. ex rel. Pouge v. Diabetes Treatment Ctrs. of Am., Inc.,*
  444 F.3d 462 (6th Cir. 2006) ................................................................................... 6

## FEDERAL STATUTES

28 U.S.C § 1407(b) ........................................................................................................ 5

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ............................................................................... 6

Federal Rule of Civil Procedure 45 ............................................................................... 6

010736-11/1606715 V1

**INTRODUCTION**

Consumer Indirect Purchaser Plaintiffs (CIPs) respond here to the Court's August 5, 2021, briefing order regarding the consolidation of cases discussed at the July 14, 2001, status conference. As a threshold matter, at that status conference the new individual direct-action purchasers (new DAPs) set up a false dichotomy: "whether the MDL is going to be separate and coordinated, separate formally but coordinated significantly with the existing action" or "collapsed" into consolidated cases. But the JPML rejected new DAPs' request for a separate MDL and instead centralized the cases into an MDL before this Court for "coordinated or consolidated pretrial proceedings." So whether coordinated or consolidated, the cases are still part of the same MDL. *See* section I, below.

New DAPs set up this false dichotomy, because by keeping the consumer indirect purchaser plaintiffs out of the MDL, new DAPs would thereby prevent CIPs from taking advantage of streamlined discovery available to MDL litigants *in obtaining discovery from third parties such as DAPs*. And counsel for CIPs know from their experience in the ongoing *In re Broiler Chicken Antitrust Litigation* that such streamlined discovery from third parties like DAPs is important given that the DAPs there—represented by the same counsel as here—refused to voluntarily appear before the judge overseeing *In re Broiler Chicken*. *See* section II, below.

Indeed, new DAPs are following the same pattern as in *In re Broiler Chicken* where the class plaintiffs were first to file and spent years litigating the case, only for the DAPs there to inject themselves into the case and exclude the class plaintiffs from

relevant discovery efforts. New DAPs here say they just want to avoid being relegated to second class citizens. But in asking to take the lead on half the depositions already planned by Class Plaintiffs, new DAPs are attempting to hijack the multi-year litigation effort for their benefit, which is particularly remarkable given DAPs' adverse interests when it comes to proving pass through. CIPs filed the first complaint here—No. 18-cv-1776—and that was almost three years prior to the filing of the new DAP complaints. If new DAPs wanted to be in charge they should have brought their cases years earlier. Thus, in deciding whether to coordinate or consolidate all the cases comprising this MDL, CIPs respectfully submit that the new DAP cases should be consolidated with all those that were already proceeding before this Court—including the first-filed CIP action. The new DAP cases should follow the lead of the litigation effort already underway, with appropriate allowances to seek additional discovery specific to their individualized interests (just like the Court ordered as to the old DAPs). *See* section III, below.

## ARGUMENT

I. **The JPML ordered the new DAP cases centralized into an MDL with those already pending before this Court.**

As the Panel put it in the transfer order, "[m]ovants seek an MDL consisting of only individual direct purchaser actions" while the parties "have notified the Panel of two related actions, one of which, pending in the District of Minnesota, is captioned *In re Pork Antitrust Litigation*."[1] The Panel explained that the "Minnesota litigation involves

---

[1] Transfer Order, *In re: Pork Direct and Indirect Purchaser Antitrust Litig.*, No. MDL 2998, ECF No. 55, at 1 (J.P.M.L. June 9, 2021). Internal citations and quotations omitted and emphasis added throughout unless otherwise indicated.

- 2 -
010736-11/1606715 V1

putative direct purchaser and indirect purchaser classes, as well as two individual actions, all of which have been consolidated for pretrial purposes."[2] The Panel further explained that "Defendants, the class plaintiffs in the Minnesota litigation, and the Commonwealth of Puerto Rico (the plaintiff in one of the individual actions in the District of Minnesota) support centralization, but request that the actions on the motion be centralized *with* the consolidated Minnesota litigation."[3]

The Panel went on to conclude that "[c]entralization of the individual direct purchaser actions separate from the Minnesota litigation, as requested by movants, would result in duplicative pretrial proceedings and potentially inconsistent pretrial rulings."[4] In other words, new DAPs would not be centralized into an MDL separate from the Minnesota cases but together with them. So the Panel ordered the out-of-district cases transferred to the District of Minnesota for "coordinated or consolidated pretrial proceedings."[5] And the Panel renamed MDL No. 2998 to match that of the consolidated Minnesota proceeding: "IT IS FURTHER ORDERED that MDL No. 2998 is renamed *In re: Pork Antitrust Litigation*."[6]

---

[2] *Id*.

[3] *Id*.

[4] *Id*. at 2.

[5] *Id*.

[6] *Id*.

New DAPs now continue to claim that they should proceed "separate from the Minnesota litigation"—the position explicitly rejected by the Panel in its transfer order. As new DAPs stated at the July 14, 2021, status conference:

> One of the issues about which we have disagreed is whether the MDL is going to be separate and coordinated, separate formally but coordinated significantly with the existing action, which in our view is reflected in our papers. The defendants seem to have a view that these matters should be collapsed, which I don't think was what the JPML did in its orders.[7]

And new DAPs repeated at the status conference that "it's important to continue to recognize that the MDL is separate."[8] But the MDL is not separate. The Panel centralized the out-of-district cases together with the consolidated Minnesota proceeding and renamed the MDL *In re: Pork Antitrust Litigation* to match that proceeding. Indeed, that is the only read of the transfer order that makes sense: otherwise two of the four DAP actions would not be included in the MDL.

Now that is not to say that the cases must be "collapsed," as new DAPs describe the purported only alternative to separate MDL treatment. On the contrary, here the JPML, as it usually does, reserved for the district court the decision whether to treat constituent MDL cases as coordinated or consolidated. In *In re Bear Creek Techs., Inc., ('772) Pat. Litig.*, for example, the Panel stated that it "refrain[s] from dictating the

---

[7] *See* Declaration of Shana Scarlett in Support of Consumer Indirect Purchaser Plaintiffs' Response re Court's August 5, 2021, Briefing Order ("Scarlett Decl."), Ex. A (July 14, 2021, Hrg. Tr.) at 5:24-6:5.

[8] *Id.* at 23:1-2.

structure of an MDL's pretrial proceedings (such as whether the litigation will proceed in a coordinated manner as opposed to consolidated proceedings)":

> We choose instead to leave the degree of coordination or consolidation of involved actions to the sound discretion of the transferee judge. In instances such as this, in which litigants seek to create a new MDL, we typically refer to our transfer of actions for coordinated or consolidated pretrial proceedings as "centralization," which we hope clarifies our role in the MDL process.[9]

So the cases can proceed in the same MDL, as the Panel ordered, whether this Court decides to coordinate or consolidate them.

## II. The JPML's centralization—whether resulting in coordinated or consolidated pretrial proceedings—allows all the cases to receive the benefits of proceeding as an MDL.

### A. MDL judges may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions and enforcing third party subpoenas.

Section 1407(b) states that MDL judges "may exercise the powers of a district judge in *any* district for the purpose of conducting pretrial depositions in such

---

[9] 858 F. Supp. 2d 1375, 1377 (J.P.M.L. 2012). *See also In re Checking Acct. Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335-36 (J.P.M.L. 2009) ("The MDL No. 2036 transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation. [C]oncerns regarding the manner and extent of coordination or consolidation of the pretrial proceedings can be presented to the transferee judge."); *In re: Disposable Contact Lens Antitrust Litig.*, 109 F. Supp. 3d 1369, 1370-71 (J.P.M.L. 2015) (in centralizing cases, suggesting that coordination of individual direct purchaser action with the other actions "may be preferable to consolidation" but because "Section 1407 contemplates transfer for coordinated or consolidated pretrial proceedings" again "leav[ing] the question of determining the extent of any coordination or consolidation to the discretion of the transferee judge").

- 5 -

coordinated or consolidated pretrial proceedings."[10] In addition, despite the reference to depositions, "it is widely accepted that this authority extends to all pretrial proceedings, including governance of non-party, extra-district subpoenas."[11] So courts have "held that the transferee judge who manages an MDL has jurisdiction under section 1407 (i.e., the statute authorizing MDL proceedings) to enforce a subpoena that requires compliance in another district."[12]

For example, in *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, the Sixth Circuit held that "a judge presiding over an MDL . . . can compel production by an extra-district nonparty [and] enforce, modify, or quash a subpoena directed to an extra-district nonparty."[13] Likewise, courts in the Eight Circuit have recognized that "in MDLs, courts are even less likely to prescribe territorial restrictions since such restrictions could hinder litigation and the intent of an MDL is to make litigation more efficient."[14] Thus, the "relevant statutes and caselaw provide for an MDL Court to resolve disputes arising

---

[10] 28 U.S.C § 1407(b).

[11] *See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2020 WL 9065791, at *1-2 (S.D.N.Y. May 8, 2020).

[12] *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 & n. 3 (D.D.C. 2017) (collecting cases).

[13] 444 F.3d 462, 468-69 (6th Cir. 2006).

[14] *In re Levaquin Prod. Liab. Litig.*, No. CIV. 08-5743 (JRT), 2010 WL 4867407, at *1 (D. Minn. Nov. 9, 2010) (citing *In re Vioxx Products Liab. Litig.,* 438 F.Supp.2d 664, 667, 669 (E.D. La. 2006) ("If one court is going to be legislatively mandated to handle thousands of cases from throughout the nation, it needs some national reach at least as to the parties.")).

from the service of Rule 45 subpoenas on non-parties located in other districts."[15] Indeed, to hold "that a court presiding over an MDL case could not enforce a motion to compel would hamper the ability of an MDL court to coordinate and consolidate pretrial proceedings."[16] Accordingly, MDL courts routinely issue orders centralizing enforcement of subpoenas within the MDL district.[17]

> **B. These broad powers are important to CIPs, because in other litigation DAPs have unnecessarily required subpoenas to be issued and enforced all over the country.**

Third party discovery is critical to CIPs' ability to obtain (1) the data necessary to prove the pass through of antitrust impact from direct purchasers to indirect purchasers; and (2) the contact information necessary to direct notice to class members. In other words, third party discovery—specifically from individual direct purchasers like DAPs—is necessary for CIPs to obtain Rule 23 certification, to establish their case on the merits, and to give class members notice of their rights.

In *In re Broiler Chicken*, for instance, the CIPs there brought claims involving the chicken industry's violation of state and federal antitrust laws by conspiring to fix the prices for fresh, raw chicken sold in grocery stores.[18] Target Corporation ("Target") is a

---

[15] *In re Neurontin Mktg., Sales Pracs., & Prod. Liab. Litig.,* 245 F.R.D. 55, 57 (D. Mass. 2007).

[16] *In re Asbestos Prod. Liab. Litig. (No. VI),* 256 F.R.D. 151, 154 (E.D. Pa. 2009).

[17] *In re Keurig*, 2020 WL 9065791, at *1-2 (collecting cases and issuing order "to adjudicate motions relating to enforcement of subpoenas against non-parties outside this District, and to centralize all such motions in this District").

[18] No. 16-cv-08637 (N.D. Ill.) (Durkin, J.).

DAP in a case that is consolidated but not part of an MDL.[19] So when the CIPs there served a subpoena on Target and moved to transfer the motion to compel to the Northern District of Illinois where both cases are pending before Judge Durkin, Target—represented by the same counsel as new DAPs here—opposed the motion and required CIPs to litigate the issue before a different judge in the district of Minnesota.[20] And the unnecessary procedural headache mounts as additional subpoenaed grocery retailers and wholesalers take the same position, and CIPs spend considerable time and expense explaining the same facts to courts across the country.[21]

Likewise, during depositions of DAPs noticed as part of the cases consolidated with *In re Broiler Chicken*, counsel for U.S. Foods and Sysco—the same counsel as for Sysco here—refused to allow the CIPs there to ask questions of the witnesses,[22] arguing

---

[19] *Target Corp. v. Agri Stats, Inc.*, No. 20-cv-7191 (N.D. Ill.) (Durkin, J.).

[20] Memo. ISO Mot. to Transfer, No. 21-mc-00034-DSD, ECF No. 15 (D. Minn. May 6, 2021) (motion to transfer); Target Corp.'s Memo. of Law in Opp'n to End-User Class Pls.' Mot. to Transfer and Mot. to Compel, No. 21-cv-03352, ECF No. 29 (N.D. Ill. May 21, 2021) (listing Scott Gant as counsel for Target in opposition to motion to transfer); End-User Consumer Pls.' Reply ISO Their Mots. to Transfer and to Compel, No. 21-cv-03352, ECF No. 36 (N.D. Ill. May 28, 2021) (reply in support).

[21] Courts less familiar with the proceeding may not appreciate as Magistrate Judge Gilbert did that, although a third-party retailer or wholesale may argue that "it is a non-party to these proceedings and, therefore, any burden imposed upon it by the IPPs' subpoenas is particularly undue," as a "potential member of the putative DPP class as a large distributor of Broilers," the retailer or wholesaler "potentially could benefit from a recovery by the DPPs in this case and it is not a completely disinterested party in the classic sense." Order, No. 16-cv-08637, ECF No. 2208, at 3-4 (N.D. Ill. May 6, 2019).

[22] Scarlett Decl., Ex. B (Dec. 2, 2020, Letter from Gustafson Gluek PLLC to all counsel).

that CIPs had to "issue nonparty subpoenas to participate in any deposition of the DAP representatives."[23]

The broad power granted to an MDL judge allows the Court to cut through all this. It is likely for this reason that new DAPs—which would be subject to such streamlined discovery—invite this Court to misread the Panel's transfer order as centralizing the two new DAP cases separate from *In re Pork Antitrust Litigation* (after which the MDL was named).

III. **Consolidation will allow the three-year litigation effort to proceed without interruption by new DAPs whose interests are adverse to CIPs.**

As Magistrate Judge Gilbert explained in *In Re Broiler Chicken*, "[t]o show impact on the indirect purchaser classes, the IPPs will have to establish that any overcharge due to the alleged conspiracy was passed through to the EUPs and CIIPPs."[24] So the "transaction data and information being sought from Porky Products is directly relevant to the EUPs' and CIIPPs' efforts to show that any alleged overcharge for the purchase of Broilers was passed through the distribution chain to the IPPs."[25] But as CIPs explained at the recent status conference, "DAPs are hostile and in conflict with the

---

[23] *Id.*, Ex. A at 14:5-16.

[24] No. 16-cv-08637, ECF No. 2208, at 2 (N.D. Ill. May 6, 2019).

[25] *Id.* The structured and transactional data sought included Porky Products' "purchase and sales data, its contracts relating to those purchases and sales, its rebate and discounts terms (if any), and any market analysis Porky Products conducted, as evidence to establish that any alleged overcharge for the purchase of Broilers was passed through the distribution chain to the IPPs." *Id.* at 1.

indirect purchasers when it relates to pass-through" due to potential allocation issues.[26] So allowing new DAPs to step in and take the lead on half of the depositions that CIPs already planned to take in support of class certification—despite that diverging interest—would gravely prejudice CIPs.

Moreover, as CIPs also explained, "direct action plaintiffs and the opt-outs have much smaller cases that they attempt to prove" as compared to the class cases.[27] So DAPs "have very little interest in proving a conspiracy that impacts the entire market," or "demonstrating common impact"—which is key to class certification.[28] Instead, "[m]any of their requests in other large MDLs relate to their individual salesperson that negotiated with the defendant and on the other side the individual defendant employee that negotiated with them."[29] For example, in *In re Broiler Chicken*, direct action plaintiff and retail grocer ALDI brought a motion to compel focused entirely on such individualized discovery.[30] But this stands in complete contrast to CIPs' focus on proving a broader impact at class certification through market mechanisms. So to allow new DAPs to take the lead on half the depositions that Class Plaintiffs already planned to take would again

---

[26] Scarlett Decl., Ex. A at 15:19-21.

[27] *Id.* at 15:4-5.

[28] *Id.* at 15:6-8.

[29] *Id.* at 15:9-12.

[30] Memo. of Law ISO Mot. to Compel Individualized Disc. for Aldi, Inc. from Defs. Tyson, Koch, Simmons, and Foster Farms, No. 16-cv-08637, ECF No. 4797 (N.D. Ill. June 30, 2021).

gravely prejudice Class Plaintiffs from being able to demonstrate the common impact needed for class certification.[31]

Instead, as the Court ordered with respect to the two earlier filed DAP actions, the new DAP cases should be consolidated with the rest of *In re Pork Antitrust Litigation* and, in addition to whatever coordinated discovery may be appropriate, "each of the consolidated cases may require discovery that is unique to the circumstances and causes of action at issue therein."[32]

This is only fair. If new DAPs wanted to be in charge they should have brought their cases years earlier. Instead, new DAPs are following the same pattern as in *In re Broiler Chicken* where the class plaintiffs were first to file and spent years litigating the case,[33] only for the DAPs there to later inject themselves[34] and create unnecessary litigation hurdles, as discussed above in section II.B. Indeed, there would be no end to the administrative hassles if the Court accepted new DAP's read of the Panel's transfer order. For example, since the Court requested briefing regarding consolidation, new DAPs requested copies of documents produced in response to third-party subpoenas to date, but

---

[31] New DAPs argued at the status conference that if CIPs are adverse to DAPs, then they are also adverse to DPPs. Scarlett Decl., Ex. A at 20:1-7. But this overlooks that the issue of pass through is the very reason for separate representation of DPPs and CIPs. Yet those classes remain united—unlike DAPs—in showing broad impact.

[32] Order on Stipulation Regarding Consolidation, ECF No. 644, ¶ 3 (Jan. 21, 2021).

[33] *Maplevale* Compl. (DPPs), No. 16-cv-8637, ECF No. 1 (N.D. Ill. Sept. 9, 2016); *Fargo* Compl. (Commercial IPPs), No. 16-cv-8851, ECF No. 1 (N.D. Ill. Sept. 12, 2016); *Percy* Compl. (EUCPs), No. 16-cv-8931, ECF No. 1 (N.D. Ill. Sept. 14, 2016).

[34] *Affiliated Foods* Compl., No. 17-cv-8850, ECF No. 1 (N.D. Ill. Dec. 8, 2017).

Defendants take the position that the protective order prohibits producing third party materials in a different case without express permission; new DAPs say theirs is a separate case, so Defendants say the materials cannot be produced.[35] This is the sort of headache that centralization is meant to avoid—and it will affect CIPs equally.

The first-filed case here was by CIPs in June of 2018.[36] And it was not until almost three years later that new DAPs, now seeking to take over half the deposition questioning, filed their first complaint.[37] They say they just want to avoid being relegated to second class citizens.[38] But they are actually attempting to hijack a multi-year litigation effort for their own benefit, which is particularly remarkable given DAPs' divergent interests when it comes to proving common impact and pass through. And more remarkable still is that new DAPs want to benefit from all the litigation effort to date yet, at the same time, do not want to share the benefits of MDL centralization.

## CONCLUSION

For these reasons, CIPs respectfully submit that this Court should recognize that, whether coordinated or consolidated, the Panel order—which centralized the new DAP cases into an MDL with those already pending before this Court—allows all the parties to benefit from streamlined MDL procedures. Moreover, the Court should also choose to

---

[35] Scarlett Decl., ¶ 3.

[36] *Duryea* Compl. (CIPs), No. 18-cv-1776, ECF No. 1 (D. Minn. June 28, 2018); *see also Maplevale* Compl. (DPPs), No. 18-cv-1803, ECF No. 1 (D. Minn. June 29, 2018); *Sandee's Bakery* Compl. (CIIPs), No. 18-cv-1891, ECF No. 1 (D. Minn. July 6, 2018).

[37] *Cheney Brothers* Compl., No. 21-cv-1373, ECF No. 1 (D. Minn. Feb. 26, 2021).

[38] Scarlett Decl., Ex. A at 19:13-14.

consolidate the new DAP cases with those already pending, with appropriate allowances to seek additional discovery specific to their individualized interests (just like the Court ordered as to the old DAPs).

DATED: August 19, 2021          HAGENS BERMAN SOBOL SHAPIRO LLP


By:          */s/ Shana E. Scarlett*
             SHANA E. SCARLETT
Rio Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.om

Steve W. Berman
Breanna Van Engelen
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Joshua J. Rissman (#391500)
GUSTAFSON GLUEK PLLC
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

jrissman@gustafsongluek.com

*Counsel for Consumer Indirect
Purchaser Plaintiffs*